AO 106 (Rev. 04/10)  Application for a Search Warrant

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 0 8 2018

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

|  |  |  |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. *18-mr-193* |
| Use of a cell-site simulator to locate the cellular device assigned call number 505-436-4730 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ **New Mexico** _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 §1153 | Offenses committed within Indian country |
| Title 18 §2241(c) | Aggravated sexual abuse with children |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _365_ days (give exact ending date if more than 30 days: *March 7, 2019* ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jeffrey T. Wright, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _March 8, 2018 @ 9:35_

_____
*Judge's signature*

City and state:  Farmington, New Mexico

B. Paul Briones, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 505-436-4730 | Case No. *18-mR-193*<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, the undersigned, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call (505) 436-4730, (the "Target Cellular Device"), which is described in Attachment A.

2.      I am a Special Agent (SA) with the Federal Bureau of Investigation ("FBI"), and have been so employed since August 2008. I am currently assigned to the Albuquerque Field Office, Farmington Resident Agency. My primary duties with the FBI include investigating violent crimes occurring in Indian Country. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state and federal law enforcement agencies. As a Federal Agent, I am authorized to investigate violations of the laws of the United States and have authority to execute arrest and search warrants issued under the authority of the United States.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location.  However, there is reason to believe the Target Cellular Device is currently located somewhere within this district because the Target Cellular Device's owner is known to spend most of his time in this district, and the telephone number area code associated with the Target Cellular Device corresponds to this district.  Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that PRESLEY DEXTER SANDOVAL has violated United States Code Title 18 §1153 – Offenses committed within Indian country, 2241(c) – Aggravated sexual abuse with children, and 2246(2)(A) and 2246(2)(C).  SANDOVAL was charged with these crimes on September 19, 2017 and is the subject of an arrest warrant issued on September 19, 2017.  There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting SANDOVAL, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

6.      Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41.  See 18

2

U.S.C. §§ 3121-3127.  This warrant therefore includes all the information required to be included in a pen register order.  See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

7.      On August 24, 2017, K.T. (hereinafter referred to as Jane Doe), year of birth 2003, disclosed to her school counselor that she had been raped by SANDOVAL.  SANDOVAL is Jane Doe's uncle and he lived next door to Jane Doe.  SANDOVAL lived with his mother, R.S., year of birth 1952, who is Jane Doe's grandmother.

8.      On August 24, 2017, Jane Doe was forensically interviewed.  During the forensic interview, Jane Doe disclosed that SANDOVAL first sexually assaulted her when she was seven years old, approximately the year 2011.  Jane Doe went to her grandmother's house, but her grandmother wasn't home.  After using the bathroom, SANDOVAL grabbed Jane Doe's arm and pushed Jane Doe onto her grandmother's bed.  SANDOVAL pulled down Jane Doe's pants and rubbed her unclothed vagina with his hand.  SANDOVAL pulled down his pants and inserted his penis into Jane Doe's anus.  Jane Doe felt SANDOVAL's penis going back and forth inside of her.  Jane Doe felt scared and tried to get away, but SANDOVAL pushed her back down.

9.      On a separate occasion when Jane Doe was seven years old, approximately the year 2011, Jane Doe again went to her grandmother's house.  After her grandmother left the house, Jane Doe walked down the hallway and entered SANDOVAL's room.  SANDOVAL was sitting in a chair.  While SANDOVAL was sitting on the chair, SANDOVAL pulled down Jane Doe's pants, rubbed her vagina with his hand, and inserted his penis into her vagina.  Jane Doe felt SANDOVAL's penis go up and down inside of her vagina.

3

10.     On a separate occasion when Jane Doe was seven years old, approximately the year 2011, SANDOVAL, Jane Doe, and Jane Doe's brothers were taking care of the family's sheep in the hills near Jane Doe's house. While Jane Doe's brothers were looking after the sheep, SANDOVAL grabbed Jane Doe's arm and pulled her behind a tree. SANDOVAL pulled down his pants and Jane Doe's pants. SANDOVAL stood behind Jane Doe and inserted his penis into Jane Doe's anus. Jane Doe felt SANDOVAL's penis go up and down inside of her.

11.     On a separate occasion when Jane Doe was eleven years old, approximately the year 2015, Jane Doe's mother, father, and two sisters left the house. Jane Doe was left at home with her two brothers. While one brother was playing outside and the other brother was on his phone with his earbuds in, Jane Doe went to her kitchen to get something to eat. SANDOVAL entered the house while Jane Doe was still in the kitchen. SANDOVAL pulled down his pants and Jane Doe's pants. SANDOVAL rubbed Jane Doe's unclothed vagina with his hand. While sitting in a chair, SANDOVAL inserted his penis into Jane Doe's anus. Jane Doe felt SANDOVAL's penis go up and down inside of her. Jane Doe tried to get up, but SANDOVAL kept pulling her back down. Jane Doe tried to tell her brother that was outside to come in. SANDOVAL told him to keep playing outside.

12.     On a separate occasion when Jane Doe was eleven years old, approximately the year 2015, Jane Doe was left at home with her brothers. Jane Doe's brothers went to the kitchen when SANDOVAL entered the house. SANDOVAL grabbed Jane Doe and took her behind the couch in her living room. SANDOVAL rubbed Jane Doe's clothed breasts with his hand. SANDOVAL then pulled down his pants and Jane Doe's pants. SANDOVAL then inserted his penis into Jane Doe's anus. Jane Doe tried to crawl over the couch to get to the kitchen, but SANDOVAL pulled her back down.

4

13.     On September 6, 2017, SANDOVAL was interviewed by law enforcement. During the interview, SANDOVAL stated that he and Jane Doe played basketball outside of their houses four years ago, in approximately the year 2013, when SANDOVAL was approximately 19 years old.  After playing basketball, SANDOVAL had sex with Jane Doe by inserting his penis into her "butt".  The sex lasted approximately one minute.  SANDOVAL stated that this was the first time he had sex with Jane Doe.

14.     Two days after the first time SANDOVAL and Jane Doe had sex, SANDOVAL had sex with Jane Doe a second time by putting his penis into Jane Doe's "butt".  This occurred outside on the basketball court.  The sex lasted approximately one minute.

15.     On a separate occasion during the same year, approximately the year 2013, SANDOVAL stated that he inserted his left index finger into Jane Doe's "butt".  FBI SA Brad Simons traced SANDOVAL's left hand on a piece of paper.  SANDOVAL then marked a line on the index finger of the traced hand indicating how far he inserted his finger into Jane Doe's "butt".  The line marked by SANDOVAL was approximately at the midpoint of the finger.

16.     On a separate occasion during the same year, approximately the year 2013, SANDOVAL stated that he inserted his right index finger into Jane Doe's vagina.  SA Simons traced SANDOVAL's right hand on a piece of paper.  SANDOVAL then marked a line on the index finger of the traced hand indicating how far he inserted his finger into Jane Doe's vagina.  The line marked by SANDOVAL was approximately at the midpoint of the finger.

17.     An arrest warrant for SANDOVAL was issued by the United States District Court for the District of New Mexico on September 19, 2017.  Law enforcement has attempted to locate and arrest SANDOVAL on numerous occasions with no success.

18.     Through a public search of Facebook, two Facebook pages were located which are believed to be used by SANDOVAL. The first Facebook page, which has the username of "presley.sandoval.9" and Facebook UID 100003795565435, contains pictures of an individual that matches known pictures of SANDOVAL. In addition, the Facebook page lists family members named Teresa Sandoval and Ro Sandoval. SANDOVAL has two sisters named Theresa Sandoval and Rolinda Sandoval. The photographs on the Teresa Sandoval and Ro Sandoval Facebook pages contain pictures of individuals that match known pictures of SANDOVAL's family.

19.     The second Facebook page, which has the username of "presley.sandoval.3" and Facebook UID 100011238848980, lists that the user's hometown is Pueblo Pintado, NM, which is where SANDOVAL grew up. The Facebook page lists the same Teresa Sandoval and Ro Sandoval as friends.

20.     On February 12, 2018, search warrants were obtained for the Facebook accounts believed to be used by SANDOVAL. A review of the search warrant results obtained from Facebook revealed that Facebook user Presley Sandoval had a Facebook conversation with Facebook user Aaron Tsosie. A portion of the conversation from December 5, 2017 is below:

> Aaron Tsosie: U got a number bro
> Presley Sandoval: 4364730

21.     On December 6, 2017, Facebook user Presley Sandoval had a Facebook conversation with Facebook user Lopez T. Adrianna. A portion of the conversation is below:

> Lopez T. Adrianna: Message? Text?
> Presley Sandoval: Text
> Lopez T. Adrianna: Number?
> Presley Sandoval: 5054364730

22.     Your affiant submits that the information detailed above establishes that there is probable cause to believe that SANDOVAL is using Target Cell Phone, cell phone number (505) 436-4730.  Your affiant further believes that obtaining location information for Target Cell Phone will assist in locating and arresting SANDOVAL.

## MANNER OF EXECUTION

23.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication.  These signals include a cellular device's unique identifiers.

24.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others.  The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device.  Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

25.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity.  Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.  In order to connect with the Target Cellular Device, the device may briefly exchange signals with

7

all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

26.     Based on the foregoing, your affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

27.     Your affiant further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 365 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and continue to flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

28.     Your affiant further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

29.     Your affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

30.     A search warrant may not be legally necessary to compel the investigative technique described herein.  Nevertheless, your affiant hereby submits this warrant application out of an abundance of caution.

Respectfully submitted,

Jeffrey T. Wright
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___March 8, 8___, 2018

_____
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (505) 436-4730, whose wireless provider is Verizon Wireless, and whose listed subscriber is unknown.

**ATTACHMENT B**

Pursuant to an investigation of PRESLEY DEXTER SANDOVAL for a violation of United States Code Title 18 §1153 – Offenses committed within Indian country, 2241(c) – Aggravated sexual abuse with children, and 2246(2)(A) and 2246(2)(C), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of sixty days, during all times of day and night.  This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).

2